FILED by ___ **LH** ___ D.C.

**Aug 15, 2019**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – FT. PIERCE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

# 19-23415-CV-ALTONAGA/GOODMAN

Case No:

DIMITRI PATTERSON,

    Plaintiff,

    vs.

THE  MIAMI HERALD MEDIA COMPANY, THE
MEREDITH CORPORATION,
BALLER ALERT INC., ROBIN LYON, BALLER
ALERT LLC, SUNBEAM TELEVISION
CORPORATION, TWENTY-FIRST CENTURY
FOX, INC., THE FOX CORPORATION, VERIZON
MEDIA LLC, VERIZON COMMUNICATIONS,
INC., TRIBUNE PUBLISHING COMPANY,
NEWS CORPORATION, COMCAST CORP., NBC
UNIVERSAL MEDIA LLC, FOOTBALLTALK
LLC, THE GANNETT COMPANY, WARNER
MEDIA LLC, BH MEDIA GROUP, INC., VOX
MEDIA, INC., THE DAILY CALLER, INC., COX
MEDIA GROUP, IBT MEDIA, INC., NEWSWEEK
MEDIA GROUP, INC., MICROSOFT
CORPORATION, ESPN, INC., NEW MEDIA
INVESTMENT GROUP, INC., GATEHOUSE
MEDIA MANAGEMENT SERVICES, INC.,
GATEHOUSE MEDIA FLORIDA HOLDINGS,
INC., CBS CORPORATION, JASMINE BRAND,
MAHIR FADLE, ROBERT LITTAL

    Defendants,

**DEMAND FOR JURY TRIAL**

**VERIFIED COMPLAINT FOR**
**DAMAGES AND INJUNCTIVE RELIEF**

**GENERAL DEFAMATION**
**DEFAMATION PER SE**
**DEFAMATION BY IMPLICATION**
**INTENTIONAL INFLICTION OF**
**EMOTIONAL DISTRESS**
**INVASION OF PRIVACY – FALSE**
**LIGHT**
**PUNITIVE DAMAGES**
**INJUNCTIVE RELIEF**
**GENERAL DAMAGES**
**NEGLIGENT INFLICTION OF**
**EMOTIONAL DISTRESS**
**SINGLE PUBLICATION RULE**

## INTRODUCTION

1.    This action is brought by the Plaintiff, Dimitri Patterson, against a multitude of media

outlets for the publishing of defamatory statements concerning unlawful arrests, purported

1

criminal cases and warrants in Miami, Florida and Orlando, Florida. This action is predicated both on what The Articles communicate as a whole, including the headlines, captions, and the numerous defamatory statements concerning the Plaintiff contained within The Articles.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C § 1332, because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and both the Plaintiff and the Defendants are citizens of different states. This Court also has jurisdiction pursuant to 28 U.S.C. 1331, because the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

3.      Venue is proper pursuant to 28 U.S.C 1391, as the Defendants are subject to this Court's personal jurisdiction, because the Defendants' actions are directed to the Forum State of Florida.

## PARTIES

4.      The Plaintiff, Dimitri Patterson, was and continues to be *sui juris* over the age of 18 and a citizen of the State of Florida.

5.      At all times material hereto, the Defendant, The Miami Herald Media Company, a corporation organized and existing under the laws of the state of Delaware, who is registered with the Delaware Secretary of State with its principle place of business in California, is the owner of the Miami Herald.

6.      At all times material hereto, the Defendant, The Meredith Corporation, a corporation organized and existing under the laws of the state of Iowa who is registered with The Iowa Secretary of State with its principle place of business in Des Moines, Iowa, is the owner of

Sports Illustrated, the Defendant is the "information content provider" pursuant to 47 U.S.C. § 230 (f)(3) and is liable for their subsidiary actions pursuant to *Florida Statute 836.03*.

7.     At all times, material hereto, the Defendant, Baller Alert, Inc., an active corporation organized and existing under the laws of the State of Florida who is registered with the Florida Department of State with its principle place of business in Miami, FL.

8.      At all times, material hereto, the Defendant, Baller Alert, LLC, a dissolved corporation organized and existing under the laws of the State of Florida who is registered with the Florida Department of State with its principle place of business in Miami, FL.

9.     At all times, material hereto, the Defendant, Robin Lyon who is a citizen of Florida is the owner of Baller Alert Inc. and Baller Alert, LLC and controls, maintains and operates the social media handle @balleralert on the global social media platform Instagram.

10.     At all times, material hereto, the Defendant, Sunbeam Television Corporation, the owner of WSVN Channel 7, a corporation organized and existing under the laws of the State of Florida, who is registered with the Florida Secretary of State, with its principle place of business in Miami, FL. Sunbeam Television Corporation is the content provider pursuant to 47 U.S.C. § 230 (f)(3).

11.     At all times, material hereto, the Defendant, BH Media Group, Inc., the owner of WPLG Local 10, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in Omaha, NE.

12.     At all times, material hereto, the Defendant, VOX Media Group, Inc., owner of Bleeding Green Nation, a corporation organized and existing under the laws of the State of Delaware,

who is registered with the Delaware Department of State,  with its principle place of business in Washington, D.C.

13.    At all times, material hereto, the Defendant, the Daily Caller, Inc., owner of the Daily Caller.com, is incorporated under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in Washington, D.C.

14.    At all times, material hereto, the Defendant, Cox Media Group, owner of FanBuzz.com, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in the State of Georgia.

15.    At all times, material hereto, the Defendant, IBT Media, Inc. owner of IBI Times.com, a corporation organized and existing under the laws of the State of New York who is registered with the New York Department of State, with its principle place of business in New York, NY.

16.    At all times, material hereto, the Defendant, the Microsoft Corporation, owner of MSN.com, a corporation organized and existing under the laws of the State of Delaware who is registered with the Delaware Department of State, with its principle place of business in Washington.

17.    At all times, material hereto, the Defendant, Newsweek Media Group, Inc., owner of IBI Times.com, a corporation organized and existing under the laws of the State of New York, who is registered with the New York Department of State, with its principle place of business in New York, NY.

18.    At all times, material hereto, the Defendant, Twenty-First Century Fox, Inc., owner of FOX News.com, a corporation organized and existing under the laws of the State of

Delaware, who is registered with the Delaware Department of State, with its principle place of business in New York, NY.

19.     At all times, material hereto, the Defendant, FOX Corporation, owner of FOX News.com, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in New York, NY.

20.     At all times, material hereto, the Defendant, News Corporation, owner of the New York Post, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in New York, NY.

21.     At all times, material hereto, the Defendant, Verizon Media LLC, owner of YAHOO.com, a corporation organized and existing under the laws of the State of Delaware who is registered with the Delaware Department of State, with its principle place of business in New York, NY.

22.     At all times, material hereto, the Defendant, Verizon Communications, Inc., owner of YAHOO.com, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in New York.

23.     At all times, material hereto, the Defendant, the Tribune Publishing Company, owner of New York Daily News, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in Chicago, IL.

24.     At all times, material hereto, the Defendant, Comcast Corp., owner of profootballtalk.com, a corporation organized and existing under the laws of the State of Pennsylvania, who is registered with the Pennsylvania Department of State, with its principle place of business in Pennsylvania.

25.     At all times, material hereto, the Defendant, NBCUniversal Media, owner of profootballtalk.com, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in New York.

26.     At all times, material hereto, the Defendant, Footballtalk LLC, owner of profootballtalk.com, a corporation organized and existing under the laws of the State of West Virginia, who is registered with the West Virginia Department of State, with its principle place of business in West Virginia.

27.     At all times, material hereto, the Defendant, the Gannett Company, owner of usatoday.com, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in Virginia.

28.     At all times, material hereto, the Defendant, Warner Media LLC, owner of tmz.com, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in New York, NY.

29.     At all times, material hereto, the Defendant, ESPN, Inc., owner of espn.com, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in Bristol, CT.

30.     At all times, material hereto, the Defendant, New Media Investment Group, Inc., owner of Palm Beach Post, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in New York.

31.     At all times, material hereto, the Defendant, Gatehouse Media Management Services, Inc., owner of Palm Beach Post, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in New York.

32.     At all times, material hereto, the Defendant, Gatehouse Media Florida Holdings, Inc., owner of Palm Beach Post, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in New York.

33.     At all times, material hereto, the Defendant, CBS Corporation, a corporation organized and existing under the laws of the State of Delaware, who is registered with the Delaware Department of State, with its principle place of business in New York.

34.     At all times, material hereto, the Defendant, Jasmine Brand, who is a citizen of California, is the Owner and operates the Website JasmineBrand.com.

35.     At all times, material hereto, the Defendant, Mahir Fadle, who is a citizen of California, is the Owner and operates the Website JasmineBrand.com.

36.     At all times, material hereto, the Defendant, Robert Littal, who is a citizen of California, is the Owner and operates the Website BlackSportsOnline.com.

## STATEMENTS OF FACTS

### DP's Background

37.     DP was born in Miami, FL and is 36 years of age and is a resident of the State of Florida.

38.     DP played in the NFL for ten years.

39.     DP is the biological father and legal guardian of one child who is 12-years-old.

40.     DP has never been charged with a crime by the State of Florida pursuant to Florida Jurisprudence 2d 1151, 1153, 1163, 1164, 1165, and Florida Statutes 27.181 and 28.222.

41.     DP has never had a warrant issued in his name pursuant to Florida Rules of Criminal Procedures 3.121, 3.131, and Florida Statute 28.222.

## SATISFACTION OF CONDITION PRECEDENT

42.     Plaintiff, DP, has provided notice to the Defendants as required by Fla. Stat. 770.01, and has satisfied all conditions precedent to the filing of this lawsuit. The Defendants have waived all conditions precedent to the filing of this lawsuit. True and correct copies of the Fla. Stat. 770.01 Notice Letters are attached hereto, see **Exhibit "B"**.  The notice demands for retractions of the defamatory and libelous statements, which have not been complied with by the Defendants by way of publishing any such retractions.

## DEFAMATORY STATEMENTS BY THE MIAMI HERALD MEDIA COMPANY
## ARTICLE 1

43.     Initially, Article 1 attempts to assassinate DP's character by stating that, "Dimitri Patterson left two Miami-Dade Police officers injured on Tuesday after he bolted from a courtroom when a judge ordered him placed under custody, police said", which is false. See **Exhibit "A"**

8

44.     Article 1 then states that, "Dimitri Patterson is expected to face charges including battery on a law enforcement officer", which is false. DP was never facing charges. See **Exhibit "A"**

45.     Article 1 continues by stating that, Dimitri Patterson "was at the Lawson E. Thomas Courthouse in downtown Miami at a hearing before Judge William Altfield", which is completely false. See **Exhibit "A"**

46.     Article 1 makes false claims stating that, "The judge ordered Dimitri Patterson to be taken into custody and he took off running", said Argemis Colome, a spokesperson for the Miami-Dade Police. This statement is completely false. See **Exhibit "A"**

47.     Article 1 states that, "Dimitri Patterson knocked down a female police officer who hit her head", Colome said, which is completely false. See **Exhibit "A"**

48.     Article 1 states that, "A male officer suffered a wrist injury", which is false. See **Exhibit "A"**

49.     Article 1 continues character assassination of DP by writing about a purported arrest affidavit that was already proven to be an unlawful arrest and charges that were never filed against him. **See Exhibit "A"**

50.     Article 1 goes on to state that, "Dimitri Patterson was there to meet the mother of his 1-year-old son", which is completely false. See **Exhibit "A"**

51.     With the intent to cause irreparable harm to DP, Article 1 continues to recite defamatory statements in an ESPN.com article stating that, "Dimitri Patterson threw a woman and her son to the ground, causing the woman and child to suffer bruises on her neck and the back of the child's head", which are false.

52.     Article 1 continues to makes false claims by stating that, "Dimitri Patterson was acquitted by a jury for culpable negligence and battery in July."

## ARTICLE 2

53.     Article 2 states that, "When former Miami Dolphins Cornerback Dimitri Patterson tried

to bolt from a hearing in family court Tuesday, it took five Miami-Dade police officers to

tackle him and get him under control" which is completely false. See **Exhibit "B"**.

54.     With clear malice intent by having full knowledge that the statements are false, Article 2

proceeds to recite every defamatory statement written in Article 1. See **Exhibit "B"**

## ARTICLE 3

55.     Article 3 states that, "The Orange County Sherriff Office arrested Dimitri Patterson late

Monday night for an active felony warrant" which is false. See **Exhibit "C"**.

56.     Article 3 continues by stating that "The charges from the warrant, according to his

booking log: battery and culpable negligence", which is false. See **Exhibit "C"**.

57.     Article 3 continues with character assassination by stating that, "This news and arrest

comes nine months after Patterson became combative while trying to flee a Miami-Dade

County courtroom in August", which is completely false. See **Exhibit "C"**.

58.     Article 3 continues stating that, "It took five police officers to tackle him and get him

under control", which is completely false. See **Exhibit "C"**.

## DEFAMATORY STATEMENTS BY THE JASMINE BRAND.COM

59.     "Exclusive: Ex Dolphins NFL'er Dimitri Patterson Sues Agent & Baby Mama, Accuses

Them of Ponzi Scheme"

60.     "Ex-Miami Dolphins cornerback Dimitri Patterson is accusing famed sports agent Drew

Rosenhaus and his baby mama of participating in a criminal Ponzi scheme against him."

61.     Patterson filed suit against Rosenhaus, Miami-Dade County, Miami Police Department,

his baby mama Erika Medina, several Miami County judges and several lawyers."

62.     "The scheme involves his baby mama allegedly suing him for paternity, which resulted in her lawyers making him believe a judge had ordered him to submit to a DNA test."

63.     "Then in 2015, he was arrested on charges of felony child abuse and battery."

64.     "He points to alleged incidents where he was coerced into paying tens of thousands to his baby mama and her lawyer."

### DEFAMATORY STATEMENTS BY BLACK SPORTS ONLINE.COM

65.     "Dimitri Patterson had a pretty solid NFL career before it all fell apart of when he went MIA from the Jets in 2014."

66.     "The scheme involves his baby mama allegedly suing him for paternity, which resulted in her lawyers making him believe a judge had ordered him to submit to a DNA test."

67.     "Then in 2015, he was arrested on charges of felony child abuse and battery."

### DEFAMATORY STATEMENTS BY THE @balleralert INSTAGRAM POST

68.     With the complete absence of a verified source the IG post imputes multiple felonies to the Plaintiff stating that, "Former NFL Player Dimitri Patterson was detained Tuesday after he injured two police officers." See Exhibit "A"

69.     The IG post then states that, "Patterson attempted to flee after a judge ordered him to be placed in custody. See Exhibit "A"

70.     With a high degree of awareness of the post's falsity the IG post continues by stating that, "While running, a female officer was knocked over by Patterson, consequently hitting her head. As a result, she was forced to go to the hospital." See Exhibit "A"

71.     The IG post makes false claims stating that, "Patterson also injured a male officer's wrist while fleeing. See Exhibit "A"

72.     The IG post continues character assassination of DP stating "Patterson will face charges, including battery on a law enforcement officer."  See Exhibit "A"

## DEFAMATORY STATEMENTS IN THE SPORTS ILLUSTRATED ARTICLE, AND MEREDITH CORPORATION

73.     Initially, Article 1 attempts to assassinate DP's character by stating that, "DP injured two police officers while trying to abruptly exit a Miami-Dade courthouse and avoid being arrested, according to the Miami Herald", which is completely false. See Exhibit "A"

74.     The Article then states that, "A judge orders DP to be placed in custody, leading him to attempt to flee from the court, according to the Herald" which is false. See Exhibit "A"

75.     The Article continues by stating that, "While running, Patterson knocked down a female officer who hit her head, forcing her to go to the hospital, and he injured a male officer's wrist, according to the Herald" which is false. See Exhibit "A"

76.     The Article continues character assassination of DP by stating that, "In 2014, DP was with the Jets during the preseason, but was let go shortly after going missing and not showing up for a preseason game". Which is false. See Exhibit "A"

77.     The Article is false in its overall defamatory portrayal of DP as a violent, impulsive, unstable person. The Article is also defamatory in many of its specific details.

## DEFAMATORY STATEMENTS BY SUNBEAM TELEVISION CORPORATION/WSVN

78.     "The 34 year-old was handcuffed by U.S. Marshalls in Orlando for an active felony warrant issued on Nov. 1 out of Miami-Dade County".

79.     " Patterson was previously charged for battery on a law enforcement officers after he injured two cops while trying to escape a Downtown Miami courtroom on Aug 15".

80.     "Both officers were treated at Jackson Memorial Hospital and eventually released".

81.    "Patterson was given a 180,000.00 bond and faces several charges including battery on law enforcement and resisting an officer without violence."

82.    "He also has to surrender his passport".

83.    "Two Miami-Dade Police officers were injured as they tried to stop a defendant, who happens to be a former Dolphins player, from fleeing the Lawson E Thomas Courthouse Center, Tuesday."

84.    "According to police, one officer suffered a head injury and a second officer sustained a wrist injury while they tried to subdue 34-year-old former NFL player Dimitri Patterson."

85.    "According to officials, when the first officer entered courtroom 2-A, Patterson attempted to flee. Patterson then tackled the officer, causing her to hit her head."

86.    "Both officers were transported to Jackson Memorial Hospital and later released."

87.    "Patterson was arrested for battery on a police officer, Tuesday afternoon."

88.    "He has a hearing scheduled for Friday at 11 a.m."

89.    "A former Miami Dolphins player arrested again months after Police say, he attacked two Miami-Dade Police Officers. U.S. Marshalls took Dimitri Patterson into custody in Orlando on a felony warrant out of Miami-Dade."

90.    "The 34-year-old played Cornerback for the team from 2012 to 2013. Last August, Patterson was charged with battery on Law Enforcement Officers, after he injured two Cops trying to escape a downtown Miami courtroom."

91.    "Those Officers were treated and eventually released."

92.    "He was given a $180,000.00 bond and facing several charges, including battery on a Law Enforcement Officer and resisting an Officer without violence."

93.     "He also has to surrender his passport as well."

## DEFAMATORY STATEMENTS BY TRIBUNE PUBLISHING COMPANY AND NEW YORK DAILY NEWS

94.     " Former NFL cornerback injured two police officers during a failed escape from a Miami-Dade courtroom on Tuesday, according to officials".

95.     "After a family court judge in Miami-Dade ordered Patterson placed under custody, the 34-year-old Miami native took off for the exit, tackling a female officer who was guarding the courtroom doors, authorities told the Daily News."

96.     "Patterson injured a second officer who was also sent to the hospital with a minor wrist injury, police said."

97.     "Patterson…..is expected to face charges of battery on a law enforcement officer".

98.     "Dimitri Patterson tried to escape from a Miami courtroom on Tuesday, but injured two officers in the process."

## DEFAMATORY STATEMENTS BY FOX NEWS AND TWENTY-FIRST CENTURY FOX, INC.

99.     "Ex Miami Dolphins Player Dimitri Patterson Assaults 2 officers, officials say".

100.    "Two Florida police officers were injured Tuesday when a former NFL cornerback tried to flee a Miami courthouse, officials said".

101.    "One officer suffered a head injury and a second officer sustained a wrist injury when they tried to arrest Dimitri Patterson, 34, for contempt of court, police told WSVN."

102.    "Some type of scuffle where the police or bailiffs or officers—two of them got involved," court interpreter Lucille Grenet told WSVN. "For whatever reason, the person was resisting."

103.    "Both officers were sent to a hospital and later released"

## DEFAMATORY STATEMENTS BY NEWS CORP AND NEW YORK POST

104.  "Former NFL cornerback Dimitri Patterson disappeared on the Jets"

105.  "The 34 year old injured two police officers while trying to bolt out of a Miami Dade family courtroom Tuesday, after the judge told him he would be going to jail."

106.  " Patterson…..will face more charges, including battery on a law enforcement officer, for trying to dash out of the courtroom, in the process knocking over an officer, who hit her head and was briefly hospitalized."

107.  "Another officer suffered a wrist injury"

108.  "In 2015 he faced felony child abuse charges, according to ESPN, for an incident in which an argument over a child support payments with an ex -girlfriend allegedly ended with their 1-year-old son suffering a bruise to the head."

109.  "The veteran cornerback went AWOL for 48 hours, missing a pre -season game with the Giants and being gone from the team without notice for a weekend."

## DEFAMATORY STATEMENTS BY THE GANNETT COMPANY, INC. AND USA TODAY

110.  "Dimitri Patterson injures cops while running from court"

111.  "Former NFL player Dimitri Patterson injured two police officers while running from court room after being detained by judge".

112.  "Former NFL cornerback Dimitri Patterson injures two police officers while trying to escape a courtroom on Tuesday"

113.  "According to the Miami Herald, a judge in Miami-Dade Family Court, ordered Patterson to be taken into custody, and he took off running and knocked down a female officer who hit her head; forcing her to go to the hospital".

114.  "He also injured a male officer's wrist"

115.    "The 34-year-old was being detained Tuesday evening, and should face charges, including battery on a law enforcement officer".

116.    "He was arrested in 2015 for felony child abuse, according to ESPN.

### DEFAMATORY STATEMENTS BY WARNER MEDIA, LLC, TMZ, AND BLEACHER REPORT

117.    " Ex- NFL Player Dimitri Patterson Tackled Cop… Police Report Says."

118.    " The defendant ran towards the door of the courtroom to exit."

119.    " While running towards the door, the defendant tackled officer B. Robert causing her to fall backwards and sustaining an injury to the back of her head."

120.    "The Police report says Patterson continued to struggle with officers and pulled another cop to avoid being handcuffed."

121.    "Patterson injured two police officers while trying to abruptly exit a Miami-Dade-courthouse and avoid being arrested."

122.    "A female officer suffered neck and back injuries, and a male officer injured his wrist while apprehending Patterson".

123.    "It took five Miami-Dade Police officers to tackle Patterson and get him under control."

124.    "Later adding Patterson arrest record reported that "with a handcuff around one wrist, he tackled one cop and knocked another to the ground before three other officers joined in and took control of the situation.

125.    "One cop suffered a head injury, another hurt a wrist."

126.    "Patterson was in a hearing for a potential contempt of court from a prior hearing, per Rabin."

127.    "He was charged with both battery on a law enforcement officer and resisting arrest with violence".

16

128. "He was eventually arrested and booked for battery on an officer and resisting arrest—both felonies."

129. "Patterson injured two police officers while trying to abruptly exit a Miami-Dade courthouse and avoid being arrested."

130. "A female officer suffered neck and back injuries, and a male officer injured his wrist while apprehending Patterson".

131. "It took five Miami-Dade Police officers to tackle Patterson and get him under control."

132. "Later adding Patterson arrest record reported that "with a handcuff around one wrist, he tackled one cop and knocked another to the ground before three other officers joined in and took control of the situation.

133. "One cop suffered a head injury, another hurt a wrist"

134. "Patterson was in a hearing for a potential contempt of court from a prior hearing, per Rabin."

135. "He was charged with both battery on a law enforcement officer and resisting arrest with violence".

### DEFAMATORY STATEMENTS BY VERIZON COMMUNICATIONS, INC. VERIZON MEDIA, LLC, AND YAHOO

136. "Longtime NFL cornerback has tried giving cops the slip before, but wasn't successful this time."

137. "According to Jordan McPherson of the Miami Herald, Patterson was arrested this week after a felony warrant was issued for him in Miami last November."

138. "The charges from the warrant were for battery and culpable negligence."

139. "He was detained in Orlando".

140. "The Jets got rid of him after he failed to show up for a preseason game in 2014."

141. "Last summer Patterson injured two Police officers while trying to escape from a courtroom."

142. "Patterson was subsequently charged with battery on a law enforcement officer and resisting arrest with violence."

## DEFAMATORY STATEMENTS BY COMCAST CORP., NBC UNIVERSAL MEDIA, AND FOOTBALLTALK, LLC.

143. "Longtime NFL cornerback has tried giving cops the slip before, but wasn't successful this time."

144. "According to Jordan McPherson of the Miami Herald, Patterson was arrested this week after a felony warrant was issued for him in Miami last November."

145. "The charges from the warrant were for battery and culpable negligence."

146. "He was detained in Orlando".

147. "The Jets got rid of him after he failed to show up for a preseason game in 2014."

148. "Last summer Patterson injured two Police officers while trying to escape from a courtroom."

149. "A former Miami Dolphins player who was ordered into custody during a family court hearing in Miami on Tuesday injured two officers when he tried to flee, authorities said".

150. "As Patterson tried to run out a door, he tackled a female officer, who fell and hit her head, police said. Another female officer suffered a hand injury before Patterson was taken into custody."

151. "Former Eagles cornerback Dimitri Patterson injured two officers while he trying to flee during a family court hearing on Tuesday, according to the police", via the Miami Herald.

152. "Patterson was charged with felony child abuse in 2015 after an altercation with his former girlfriend in Aventura ended with his 1-year-old son being bruised, ESPN reported."

153.    "Patterson met his ex-girlfriend at Aventura Mall on August 1, 2015, for a custody

exchange of their 1-year-old child when an argument ensued over child support payments."

154.    "While placing the boy in the back seat of the car, Medina told Patterson to calm down,

warning him that she wouldn't allow him to take the child," Cimini reported.

155.    "Patterson grabbed her around her neck and threw her to the ground, according to the

incident report."

156.    "While this occurred, Medina was holding [the boy]. This action caused him to fall also

and hit his head".

157.    "Court records show Patterson was eventually acquitted of battery and culpable

negligence and battery."

158.    "Patterson was last with the Jets in 2014 but suspended indefinitely by the team after

leaving without contacting the organization."

### DEFAMATORY STATEMENTS BY VOX MEDIA, INC. AND BLEEDING GREEN NATION

159.    "Patterson recently injured two police officers while trying to escape from a courtroom,

per ESPN".

160.    "When the judge ordered his arrest, Patterson attempted to bolt from the courtroom and

tackled two officers, police said."

### DEFAMATORY STATEMENTS BY BH MEDIA GROUP, INC., AND WPLG LOCAL 10

161.    "Two officers were injured Tuesday when a former Miami Dolphin cornerback tried to

escape from a courtroom at the Lawson E. Thomas Courthouse Center in downtown Miami,

authorities said."

162.   "Miami-Dade Police spokeswoman Jennifer Capote said Dimitri Patterson, 34, was appearing in family court in the courthouse at 175 N.W. First Ave. when Judge William Altfield told him that he would be going to jail."

163.   "Authorities said Patterson tried to escape from courtroom 2A and tackled a female officer."

164.   "The officer struck her head and was taken to a hospital."

165.   "Capote said another officer suffered minor injuries during the attempted escape."

166.   "Patterson was arrested after an incident with his child's mother on August. 1, 2015, at the Aventura Mall."

167.   "Patterson met his girlfriend for a custody exchange of their then 1-year-old son and an argument ensued over child support payments."

168.   "Police said that the baby suffered a bruise to the back of his head."

169.   "Authorities said the ex-girlfriend, Erika Medina, suffered redness to her neck area and a cut to her left elbow."

170.   "Patterson was arrested on charges of felony child abuse and misdemeanor battery".

171.   "Records show that Patterson was previously acquitted by a jury on charges of misdemeanor battery and culpable negligence."

## DEFAMATORY STATEMENTS BY THE DAILY CALLER, INC.

172.   "Dimitri Patterson, a former cornerback for the Miami Dolphins, injured two police officers in a Miami courthouse on Tuesday."

173.   "The officers were trying to arrest Patterson for contempt of court when he began to flee."

174.   "As he attempted to flee the courtroom, one officer suffered a head injury, while the other one hurt their wrist."

175.   "A court reporter told WSVN, 'Some type of scuffle where the police or bailiffs or officers—two of them got involved. For whatever reason, the person was resisting."

176.   "The officers both went to the hospital after the incident, but were later released."

177.   "Patterson was arrested for battery of a police officer and has added a charge to whatever the reason he was in court in the first place".

### DEFAMATORY STATEMENTS BY THE COX MEDIA GROUP AND FANBUZZ

178.   "A former NFL cornerback got so combative during a court hearing that it took five officers to subdue him, and two were injured in the process, according to an arrest affidavit reviewed by the Miami Herald."

179.   " Dimitri Patterson……was arrested after the altercation in Miami Dade Circuit Court."

180.   "He was charged, the Herald reported, with battery on a law enforcement officer and resisting arrest with violence."

181.   "Patterson was in court on Tuesday…..when a judge ordered him taken into custody, he tried to bolt the courtroom."

182.   "Police told the Herald that a female officer hit her head and a male officer injured his wrist while trying to subdue Patterson."

183.   "Failed to show up for a pre-season game"

### DEFAMATORY STATEMENTS BY IBT MEDIA, INC., NEWSWEEK MEDIA GROUP, INC., AND IBTIMES.COM

184.   "*Ex- NFL player Dimitri Patterson arrested for injuring two cops while fleeing court.*"

185.   "An officer reportedly suffered a head injury and another officer suffered a wrist injury as they attempted to subdue Patterson."

186.  "According to the Miami Herald, Patterson lost his cool while Miami Dade Circuit Judge William Altfield determined whether to charge him with contempt of court from an earlier hearing."

187.  "The court became concerned with Patterson's behavior and requested police presence to "keep the peace".

188.  " As he was being taken into custody, Patterson ran towards the  doors of the Lawson E. Thomas Courthouse Center."

189.  "With one hand in handcuffs, he tackled one officer and knocked down another to the ground."

190.  "Patterson was taken into custody on Tuesday and charged with battery on a law enforcement officer and resisting arrest with violence."

191.  "Patterson was acquitted by a jury for culpable negligence and battery in July."

**DEFAMATORY STATEMENTS BY MICROSOFT CORPORATION AND MSN.COM**

192.  *"Former  Player Dimitri Patterson Injures Cops While Running From Court"*

193.   *" Former NFL Player Dimitri Patterson injured two police officers while running from court room after being detained by judge. "*

**DEFAMATORY STATEMENTS BY ESPN, INC.**

194.  "Dimitri Patterson in custody after courtroom escape attempt".

195.  "A female officer suffered neck and back injuries, and a male officer injured his wrist while apprehending Patterson"

196.  "Patterson appeared in a "family court" hearing on Tuesday due to a prior incident "He could face additional charges, and he remains in custody".

197.   "When the judge ordered his arrest, Patterson attempted to bolt the courtroom and tackled two officers, police said."

198.   "Dimitri Patterson Facing Felony Child Abuse Charge".

199.   "Former NFL cornerback Dimitri Patterson, went AWOL from the New York Jets, is facing a felony child abuse charge stemming from an Aug. 1 altercation."

200.   "Met a former girlfriend for a custody exchange of their 1-year-old son and an argument ensued over child support payments, according to an Aventura Police Department report."

201.   "The alleged incident ended with the child suffering a bruise to the back of the head."

202.   "Ericka Medina, 28, who told police she dated Patterson for four years, suffered redness to her neck area and a cut to her left elbow."

203.   "Medina told police that Patterson displayed "an aggressive tone.""

204.   "She wanted to document it because Patterson had been "violent to her in the past.""

205.   "Patterson "grabbed her around her neck and threw her to the ground.""

206.   " This action caused [him] to fall also and hit his head."

207.   "An eyewitness who works at the shopping mall corroborated the account with a statement to police."

208.   "In addition to child abuse, he was charged with misdemeanor battery."

209.   "The Jets were blindsided when Patterson never showed up for a preseason game."

210.   "He was AWOL for 48 hours".

211.   "Eight days after the team confirmed he was missing."

## DEFAMATORY STATEMENTS BY GATEHOUSE MEDIA AND PALM BEACH POST

212.   " Dimitri Patterson,.....attended a hearing at Lawson E. Thomas Courthouse Center in Miami on Tuesday, according to the Miami Herald."

213.    "Following Judge William Altfield's order that Patterson be taken into custody, Patterson ran out of the courtroom, knocking over a female officer and causing her to hit her head."

214.    "Patterson was arrested in 2015 and charged with felony child abuse."

215.    "Court records obtained by the Miami Herald also show that he was acquitted for culpable negligence and battery in July."

216.    "Patterson was.....charged with battery on a law enforcement officer.

### STATEMENTS BY CBS CORPORATION

217.    "Courtroom chaos today involving a former member of the Miami Dolphins".

218.    "Thirty-four-year-old Dimitri Patterson, was booked into jail tonight".

219.    "He's accused of running from a courtroom at the family courthouse of Miami when an Officer tried to place him into custody".

220.    "A female Officer hurt her head in the melee, and another Officer hurt his wrist. Patterson played eight games for the Dolphins in 2012 and 2013".

### FALSITY

221.    All of the Articles are false in their overall portrayal of DP as a violent, impulsive, unstable, heartless, cruel person, who is abusive to women and children, and a fugitive evading felony charges. The Articles are also defamatory in many of their specific details.

222.    DP never injured any police officers while running out of a courtroom at the Lawson E. Thomas Courthouse in downtown Miami, nor did a Judge order for him to be taken into custody. There are cameras outside and inside the courtroom, which supports this and there are no official judicial proceedings or documentation that exists of a judge holding DP in contempt of court.

223.    DP was never facing the charge of battery on a law enforcement officer, nor was there a legal hearing requiring DP to be at the Lawson E. Thomas Courthouse. You must first have a valid case number with a legal charging document on file. This can easily be proven by requesting copies of certified court records from the Clerk.

224.    All of the Defendants' Articles are published based on a purported person, or, on an

unverified source. In addition, there is no record of an <u>official</u> statement from a Miami-Dade

Police Officer, nor did the Defendants publish a Final Police Report.

225.    DP does not have a 1-year-old son, nor did he do any of the defamatory statements in

any of the Defendants' Articles.

226.    DP was never legally acquitted of battery and culpable negligence by a jury in July,

2017, because he was never legally charged with those two crimes. You cannot acquit a

person of a crime that they were never charged with pursuant to Florida law.

227.    DP has never had a warrant issued for his arrest with the purported charges of battery

and culpable negligence.

228.    The Orange County Sherriff's Office did not find DP in Orlando, nor did they arrest

him on a warrant.

229.    There is no legal enforceable Order issuing a $180,000.000 bond.

230.    DP has never been indicted of a crime pursuant to Florida law.

231.    There is no legal enforceable Administrative Child Support Order.

232.    DP never choked the purported victim at the Aventura Mall.

233.    DP never abused a person in his life.

## MALICE

234.    Malice is defined as, when a statement is made with knowledge that it was false, or, reckless

disregard, whether it was false or not. *New York Times Co v. Sullivan* 376 U.S. at 279-80 (1964). The

Defendant's state of mind can be proved circumstantially as well. *See St. Amant v. Thompson*, 390

U.S. 727, 732, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); *Hunt v. Liberty Lobby*, 720 F.2d 631, 643 (11th

Cir. 1983). A Defendant must prove truth in defamation cases, because the common law presumes any

statement made with defaming effect was false. *Jones, Varnum & Co. v. Townsend's Administratrix*, 21 Fla. 431 (1885). Accord, *Firestone v. Time, Inc.*, 460 F.2d 712, 722 (5th Cir. 1972) (Bell, J. concurring); *Curtis Publishing Co. v. Fraser*, 209 F.2d 1, 9 n. 6 (5th Cir. 1954); *Drennen v. Westinghouse Elec. Corp.*, 328 So.2d 52, 55 (Fla. 1st DCA 1976); *Miami Herald Publishing Co. v. Brautigam*, 127 So.2d 718, 723 (Fla. 3d DCA 1961).

235.    Inasmuch as defendants did not know the statement was false, plaintiff's claim rests on proof of a reckless disregard of whether it was false or not. To satisfy the reckless disregard standard, plaintiff had to establish that defendants in fact " `entertained serious doubts as to the truth of the publication' " or that they actually had a "`high degree of awareness of its probable falsity'" (*Harte-Hanks Communications v Connaughton, 491 US 657, 667,.*

236.    The Defendants had no qualified privilege to make false and defamatory statements against the Plaintiff, nor was there any interest, or, a legal, moral, or, social duty in regard to a certain subject (Dimitri Patterson), when speaking to another "having a corresponding interest or duty." Examples: "a communication to an employer regarding his employee's performance"; "communications for bona fide commercial purposes where the interest to be protected is the recipient's"; "statements of a citizen to a political authority regarding matters of public concern."

237.    Whether there was a privilege, apart from the question of its abuse, may be determined by the court, if the evidence is undisputed. *Nodar v. Galbreath*, 462 So.2d 803 (Fla. 1984); See, *e.g.*, *Knepper v. Genstar Corp.*, 537 So.2d 619 (Fla. 3d DCA 1988); *Drennen v. Westinghouse Electrical Corp.*, 328 So.2d 52 (Fla. 1st DCA 1976). Contrast *Nodar*, 462 So.2d at 810. The evidence shows that the Defendants did not publish the defamatory article in truth, or, with good motive. The objective was simply to secure an irresistible story at the expense of the Plaintiff's reputation and well-being. In Florida, a defendant is at fault if he was at least negligent. *Miami Herald Publishing Co. v. Ane*, 458

So.2d 239 (Fla. 1984).

238.    All Defendants published their defamatory articles by citing inaccurate details from an

unverified source.

239.    There is no official statement by a government official documented at the time the

defamatory articles were published.

240.    The evidence proves all Defendants knew the statements were false because they

published the defamatory articles without a verified source. This proves all of the Defendants

had a high degree of awareness of the Articles falsity.

241.    All of the Defendants purposefully avoided verifying an official statement by a

government official, this "inaction was a product of a deliberate decision not to acquire

knowledge of facts that might confirm the probable falsity" of the published statements

(*Harte-Hanks Communications v Connaughton*, 491 US, at 692,  This proves the intentional

avoidance of truth. See **Exhibit "A"**.

242.    The  Articles fall well short of an authentic news dispatch, because it lacks verified

sources and are hearsay.

243.     All of the Defendants imputed multiple felonies to the Plaintiff. A statement is

defamatory per se, recognized and deeply rooted in Florida law, when statements are so

powerful in their ability to hurt someone that the law presumes harm as a matter of law. See

Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law presumes malice in their

utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592 (1906), where the words are

"… of such common notoriety established by the general consent of men, that the courts

must of necessity take judicial notice of its harmful effect. Layne v. Tribune Co.,108 Fla.

177, 146 SO. 234, 236

## NO FAIR REPORTING PRIVILEGE

244.    A newspaper 'has a qualified privilege to report accurately on information received from government officials. The privilege extends to the publication of the contents of official documents, as long as the account is reasonably accurate and fair.' *Rasmussen v. Collier County Pub. Co.*, 946 So.2d 567, 570-71 (Fla. 2d DCA 2006). 'This statement merely means that the report of judicial proceedings must be correct.' *Walsh v. Miami Herald Pub. Co.*, 80 So.2d 669, 671 (Fla.1955).

245.    There is no evidence that proves all of the Defendants republished accurate, fair, and impartial statements from a government official, or, obtained information from official court proceedings and records, which constitutes deliberate avoidance of the truth by the Defendants.

246.    A final police report was never reported on. Therefore, the Fair Reporting Privilege is not a viable defense for the Defendants.

247.    There are no official records that detail official judicial proceedings in this action. The unlawful arrest of the Plaintiff on August 15, 2017, was not an official judicial proceeding, nor was there an official arrest warrant presented at the time of the unlawful arrest on May 7, 2018.

248.    The evidence proves all of the Defendants cannot and will not prove they received an official statement from a government official before the defamatory articles were published, which proves that all of the Defendants had reckless disregard and purposefully avoided the truth. See **Exhibit "A"**

249.   The evidence shows the Defendants cannot and will not prove they received an official warrant pursuant to Florida Rules of Criminal Procedure 3.121 and 3.131 before publishing the Article, which proves the Defendants deliberately avoided finding the facts.

250.   The evidence proves that all of the Defendants sources are <u>unverified</u> and <u>do not exist</u>.

251.   Out of their own imagination, all of the Defendants published the Articles with negligence, gross irresponsibility, and with actual malice. The Defendants knew that they were publishing a devastating portrait of the Plaintiff as a violent, impulsive, unstable, heartless, and cruel person without any <u>verified source</u> to support their Articles.

252.   "Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an <u>unverified anonymous telephone call</u>. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports". *St. Amant v. Thompson,* *390 U.S.* at 732, 88 Ct. 1323.

253.   Here, the evidence proves the Defendants' Articles are based wholly on <u>unverified</u> anonymous sources. See **Exhibit "A"**

254.   The Defendants cannot and will not prove they reported on an official judicial proceeding.

255.   With full knowledge of the absence of a <u>verified official statement</u> from a government official or <u>official records</u>, the Defendants knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

256.    There are no official records that detail official judicial proceedings in this action. The unlawful arrest of the Plaintiff on August 15, 2017 was not an official judicial proceeding.

257.    The Defendants had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when the Articles were published.

258.    The evidence proves that the Defendants published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendants had a high degree of awareness of the falsity of the publications.

259.    To publish defamatory statements without an official statement by a government official or, official records, is a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of the defamatory statements proving that only a reckless publisher such as the Defendants, would have put such allegations into circulation.


**COUNT 1**
**(General Defamation)**
**The Meredith Corporation**

260.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 73-77, and 221-259, inclusive, as it is fully stated herein.

261.    The Defendant wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation.

262.    Defendant's defamatory statements were not privileged.

263.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

264.    Here, the evidence proves the Defendant's Articles are based wholly on <u>unverified</u> anonymous sources.

265.    The Defendant cannot and will not prove they reported on an official judicial proceeding.

266.    This was the case where the articles published were a complete fabrication with no official statement by a government official in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

267.    The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

268.    With full knowledge of the absence of a verified official statement from a government official, or, official records, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the internet and the State of Florida.

269.    The Defendant had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when the Defendant published the Articles.

270.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

**COUNT II**
**(Defamation Per Se)**
**The Meredith Corporation**

271.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 73-77, and 221-259 inclusive, as it is fully stated herein.

272.   The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation *per se.*

273.   The Defendant's defamatory statements were not privileged.

274.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

275.   The Defendant imputed multiple felonies to the Plaintiff.

276.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson in paragraphs 37-41, 73-77, and 221-259 as a result he is entitled to damages and injunctive relief.

277.   A statement is defamatory per se, recognized and deeply rooted in Florida law, when statements are so powerful in their ability to hurt someone that the law presumes harm as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592 (1906), where the words are ". . . of such common notoriety established by the general consent of men, that the courts must of necessity take judicial notice of its harmful effect. Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

## COUNT III
### (Defamation by Implication)

**The Meredith Corporation**

278.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 73-77, and 221-
259 inclusive, as it is fully stated herein.

279.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be
published the statements set forth above. The defamatory statements prove to be defamation
by implication.

280.    The Defendant's defamatory statements were not privileged.

281.    Defamation by implication is an intentional tort recognized in Florida. See *Jews
for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of
character that happens from what is implied when a defendant (1) juxtaposes a series of facts
so as to imply a defamatory connection between them; or (2) creates a defamatory
implication by omitting facts.

282.    The Defendant maliciously published the false statements about the Plaintiff, and these
statements were defamatory in that they created false impressions of the Plaintiff.

283.    The Defendant severely juxtaposed a series of facts so as to imply a defamatory
connection between them or, in the alternative, created a defamatory implication by omitting
facts when describing the nature and sequence of events.

284.    A reasonable person would understand the Defendant's statements to impart the false
innuendo, which would be highly offensive to a reasonable person.

285.    The false impression of the Plaintiff given in paragraphs 37-41, 73-77, and 221-259,
which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person,
therefore, he is entitled to damages and injunctive relief.

**COUNT IV**
**(Intentional Infliction of Emotional Distress)**

**The Meredith Corporation**

286.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 73-77, and 221-259, inclusive, as it is fully stated herein.

287.    The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff, which they knew or should have known to be false.

288.    The defamatory statements described in paragraphs 37-41, 73-77, and 221-259 constitute outrageous conduct against the Plaintiff.

289.    The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless disregard of the high probability of causing the Plaintiff to suffer emotional distress.

290.    A reasonable person in Plaintiff's position would consider Defendant's conduct as outrageous.

291.    The Plaintiff suffered severe emotional distress, and the outrageous conduct of the Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive relief.

**COUNT V**
**(Invasion of Privacy – False Light)**
**The Meredith Corporation**

292.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 73-77, and 221-259, inclusive, as it is fully stated herein.

293.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The published statements by the Defendant portrayed the Plaintiff in a false light to the public.

294.   Defendant's defamatory statements were not privileged.

295.   Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

296.   Here, the evidence proves the Defendant's Articles are based wholly on <u>unverified</u> anonymous sources.

297.   The Defendant cannot and will not prove they reported on an official judicial proceeding.

298.   This was the case where the articles published were a complete fabrication with no <u>official statement by a government official</u> in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

299.   The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

300.   The Defendant has interfered with the Plaintiff's right to be left alone.

301.   The Defendant disseminated statements to the public. Restatement (Second) of Torts § 652D comment a (1977).

302.   A reasonable person will find the Defendant's publication to be highly offensive.

303.   As a result of the Defendant's publication to the public, the Plaintiff was severely injured.

304.   With full knowledge of the absence of a <u>verified official statement</u> from a government official, or, <u>official records,</u> the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the Internet and the State of Florida.

305.   Dimitri Patterson has suffered severe injuries in the form of internal and emotional

distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT VI
### (Negligent Infliction of Emotional Distress)
### The Meredith Corporation

306.    The Defendant was negligent when publishing defamatory statements in the article above, which inflicted emotional distress on the Plaintiff.

307.    The Defendant failed to use reasonable care when publishing the defamatory statements.

308.    A reasonable publisher under similar circumstances would not have published the defamatory statements in the article above.

309.    As a result of the Defendant's negligence, the Plaintiff has been severely injured.

310.    Dimitri Patterson has suffered severe injuries in the form of  internal and emotional distress, anguish, substantial damage to his wellbeing, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

## COUNT 1
### (General Defamation)
### Baller Alert, Inc., Robin Lyons, Baller Alert LLC

311.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 68-72, and 221-259, inclusive, as it is fully stated herein.

312.    The Defendant wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation.

313.    Defendant's defamatory statements were not privileged.

314.    Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

315.    Here, the evidence proves the Defendant's Articles are based wholly on <u>unverified</u> anonymous sources.

316.    The Defendant cannot and will not prove they reported on an official judicial proceeding.

317.    This was the case where the articles published were a complete fabrication with no <u>official statement by a government official</u> in existence when the Defendant published the Articles, which proves that the Defendant knew the statements were false and purposefully avoided the truth.

318.    The evidence proves that the Defendant published the defamatory articles with no evidence of an official statement by a government official or official documentation, which proves the Defendant had a high degree of awareness of the falsity of the publications.

319.    With full knowledge of the absence of a <u>verified official statement</u> from a government official, or, <u>official records</u>, the Defendant knowingly, maliciously, and recklessly published defamatory statements imputing multiple felonies to the Plaintiff, and then proceeded to disseminate the defamatory statements throughout the internet and the State of Florida.

320.    The Defendant had obvious reasons to doubt the veracity of the information reported because there was no evidence of official records or an official statement from a government official when the Defendant published the Articles.

321.    Dimitri Patterson has suffered severe injuries in the form of internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external

reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson, and he is entitled to damages and injunctive relief.

**COUNT II**
**(Defamation Per Se)**
**Baller Alert, Inc., Robin Lyons, Baller Alert LLC**

322. The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 68-72, and 221-259 inclusive, as it is fully stated herein.

323. The Defendant, wrongfully and with actual malice and gross negligence, caused to be published the statements set forth above. The defamatory statements prove to be defamation *per se.*

324. The Defendant's defamatory statements were not privileged.

325. Dimitri Patterson seeks recovery of actual, presumed, and punitive damages.

326. The Defendant imputed multiple felonies to the Plaintiff.

327. Dimitri Patterson has suffered severe injuries in the form of  internal and emotional distress, anguish, substantial damage to his well-being, overwhelming damage to his external reputation, and devastating damage to his family, personal, community, civic, and business relationships in Orlando, FL, his former residences of Miami, FL, and elsewhere as a direct and proximate result of the Defendant's cynical exploitation of the reputation of Dimitri Patterson in paragraphs 37-41, 68-72, and 221-259 as a result he is entitled to damages and injunctive relief.

328. A statement is defamatory per se, recognized and deeply rooted in Florida law, when statements are so powerful in their ability to hurt someone that the law presumes harm

as a matter of law. See Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887). "The law

presumes malice in their utterance," Abraham v. Baldwin, 51 Fla. 151, 42 So. 591, 592

(1906), where the words are ". . . of such common notoriety established by the general

consent of men, that the courts must of necessity take judicial notice of its harmful effect.

Layne v. Tribune Co.,108 Fla. 177, 146 SO. 234, 236 (1933).

### COUNT III
### (Defamation by Implication)
### Baller Alert, Inc., Robin Lyons, Baller Alert LLC

329.    The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 68-72, and 221-
259, inclusive, as it is fully stated herein.

330.    The Defendant, wrongfully and with actual malice and gross negligence, caused to be
published the statements set forth above. The defamatory statements prove to be defamation
by implication.

331.    The Defendant's defamatory statements were not privileged.

332.    Defamation by implication is an intentional tort recognized in Florida. See *Jews
for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1108 (Fla. 2008). It is defined as a defaming of
character that happens from what is implied when a defendant (1) juxtaposes a series of facts
so as to imply a defamatory connection between them; or (2) creates a defamatory
implication by omitting facts.

333.    The Defendant maliciously published the false statements about the Plaintiff, and these
statements were defamatory in that they created false impressions of the Plaintiff.

334.    The Defendant severely juxtaposed a series of facts so as to imply a defamatory
connection between them or, in the alternative, created a defamatory implication by omitting
facts when describing the nature and sequence of events.

335.   A reasonable person would understand the Defendant's statements to impart the false innuendo, which would be highly offensive to a reasonable person.

336.   The false impression of the Plaintiff given in paragraphs 37-41, 68-72, and 221-259, which the Defendant created, caused irreparable harm to Plaintiff, his reputation and person, therefore, he is entitled to damages and injunctive relief.

## COUNT IV
### (Intentional Infliction of Emotional Distress)
### Baller Alert, Inc., Robin Lyons, Baller Alert LLC

337.   The Plaintiff re-alleges each and every allegation in paragraphs 37-41, 68-72, and 221-259, inclusive, as it is fully stated herein.

338.   The Defendant has severely defamed the Plaintiff by knowingly, intentionally, willfully, recklessly, grossly negligently, and/or negligently publishing statements about the Plaintiff, which they knew or should have known to be false.

339.   The defamatory statements described in paragraphs 37-41, 68-72, and 221-259 constitute outrageous conduct against the Plaintiff.

340.   The Defendant intended to cause Plaintiff to suffer emotional distress, or, in the alternative, the Defendant, or, their agent, engaged in the defamatory conduct with reckless disregard of the high probability of causing the Plaintiff to suffer emotional distress.

341.   A reasonable person in Plaintiff's position would consider Defendant's conduct as outrageous.

342.   The Plaintiff suffered severe emotional distress, and the outrageous conduct of the Defendant was a cause of the emotional distress suffered by the Plaintiff, and as a direct and proximate result of the Defendant's action, the Plaintiff is entitled to damages and injunctive